OKETOPA ATUATASI, Petitioner

v.

MOAALI'ITELE TU'UFULI in his capacity as Commissioner of Public Safety, WILLIAM M. SELLERS in his capacity as Prison Warden, and AMERICAN SAMOA GOVERNMENT, Respondents

High Court of American Samoa
Division

CA No. 55-88

July 25, 1988

Before REES, Chief Justice, AFUOLA, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Petitioner, Aviata Fa'alevao
For Respondents, James Doherty, Assistant Attorney General

On Motion for Reconsideration:

On July 22, 1987, petitioner Oketopa Atuatasi was convicted of attempted rape. He was sentenced to a term of seven years in prison.

The Court then invoked the provision of a recent amendment to the territorial statute dealing with probation. This amendment allows the Court to exercise a degree of control over the circumstances of a prisoner's incarceration by imposing a lengthy term of detention as a condition of probation. The execution of the seven-year sentence was suspended and Mr. Atuatasi was placed on probation for five years, on the condition that he actually serve two years and 121 days in the Territorial Correctional Facility.

It was an explicit condition of the sentence that "[d]uring said period of incarceration defendant is not eligible for any release from the confines of the correctional facility for reasons other than emergency medical care, without prior written permission of this Court." American Samoa Government v. Atuatasi, CR No. 12-87, Judgment and Sentence, page 2.

55

On March 15, 1988 --- less than nine months after the imposition of his seven year sentence and of the two years and 121 days during which he was not to leave the correctional facility without written permission of the Court --- Mr. Atuatasi petitioned the Parole Board for release on parole. On March 22 his petition was granted. The Parole Board's decision stated that Mr. Atuatasi had been "sentenced to two (2) years and 121 days imprisonment" and that he "has served one-third of his prison term, and is therefore eligible to apply for parole." He was then released.

Several weeks later the High Court probation officer charged with supervising Mr. Atuatasi's probation happened to see Mr. Atuatasi at large in the village of Lauli'i. He filed an affidavit to this effect with the Chief Justice, who forwarded it to the Warden with a request for a response to the allegation that Mr. Atuatasi was at large.[1]

The Warden, after examining the Court's judgment and sentence in the case and consulting with the Office of the Attorney General, ordered Mr. Atuatasi reconfined to the Correctional Facility. An Assistant Attorney General then called the Chief Justice to notify him that Mr. Atuatasi was back in custody. The Chief Justice ordered that Mr. Atuatasi's attorney of record, the

---

[1] When this action came before the High Court for a hearing, the Chief Justice stated for the record the facts concerning his administrative involvement with the case and offered to disqualify himself from further involvement if either party so requested. He pointed out, however, that. if he were to disqualify himself it would be necessary for the Associate Justice to hear the case. This would leave no qualified member of the Appellate Division in the Territory until the next regular sitting of an appellate panel consisting of judges from the United States. In view of the desirability of having a Justice of the Appellate Division present in the Territory to hear motions for interlocutory relief pending appeal in the event the trial court should deny such relief, both parties waived any objection to the participation of the Chief Justice as trial judge.

Public Defender, be notified immediately so that he could consult with his client and make such motions as he might deem appropriate. The Assistant Attorney General notified the Public Defender.

On May 18, 1988, exactly one month after Mr. Atuatasi was reconfined, he commenced the present action by requesting a writ of habeas corpus. The writ was requested at 3:30 p.m. on May 18 and issued immediately; it required the Warden and the other named defendants to "have the body of Oketopa Atuatasi to the High Court at 9:00 a.m. on May 20, . . . then and there to state why said Petitioner was being restrained . . . ."

The defendants accordingly delivered Mr. Atuatasi and explained his detention by reference to the facts recounted above. The Court ruled that the detention was lawful, a ruling we are now asked to reconsider.

Petitioner advances two arguments: that his detention is unlawful because it violates the Parole Board's order that he be released, and that the procedure by which he was reconfined violated his right to due process of law.

## I.  The Relationship Between Parole and Probation

Turning first to the substantive argument, we conclude that the continued detention of Mr. Atuatasi is not unlawful. The Parole Board order was clearly outside the statutory jurisdiction of the Board and therefore does not bind the Warden or anyone else. Moreover, it conflicts directly with a Court order that does bind the Warden and the other respondents.

The Parole Board has authority to order a prisoner's release only after he has served one-third of his sentence of imprisonment. A.S.C.A. § 46.2304. If a prisoner has not served this minimum term of imprisonment, the Parole Board lacks jurisdiction even to entertain his application. A.S.C.A. § 46.2702. The sentence of imprisonment in this case was seven years. Assuming that the Parole Board can ever acquire jurisdiction in this case, it will not acquire such jurisdiction until late 1989 when one-third of the seven year sentence will have elapsed.

As the Assistant Attorney General explained at the hearing held pursuant to the writ of habeas corpus, there is no reason to believe that the Parole Board wilfully acted outside its jurisdiction; rather, the clerical employee who prepared the application and the order simply made a mistake. The confusion arose from the Court's decision to suspend execution of the seven-year sentence and impose a number of conditions. One of these conditions was actual detention of two years and 121 days --- one-third of the seven year sentence --- during which the Court would have sole authority to order any release. The Parole Board employee mistook this condition of probation for the sentence of imprisonment. Nobody caught the mistake until the Probation Officer saw the petitioner at large in Lauli'i.

Counsel for the petitioner suggests, however, that the Parole Board was not mistaken in its calculation of when one-third of the "sentence of imprisonment" had elapsed. Although the Court sentenced petitioner to a term of seven years, it suspended execution of this sentence. The suspension was on several conditions, but the only condition requiring actual confinement was for two years and 121 days (i.e., one-third of seven years). Counsel therefore argues that petitioner was eligible for parole after he had served one-third of this conditional confinement ---i.e., one-third of one-third of seven years.

### The History of the Conditional Detention Statute

This argument ignores the unique history and function of the American Samoa statute dealing with detention as a condition of probation, A.S.C.A. § 46.2206. This statute was originally derived from similar provisions in the United States which typically allowed the Court to impose a very short period of detention in a jail or "halfway house" as an alternative to imprisonment. The judge would presumably impose such detention only in cases involving youthful offenders and others for whom lengthy confinement in an actual prison would be inappropriate or even counterproductive. See Masaniai v. American Samoa Government, 6 A.S.R.2d

58

114, 120-22 (1987), and authorities cited therein.[2] By 1987, however, detention as a condition of probation had come to be used for almost exactly

[2] Our analysis of the function of A.S.C.A. § 46.2206 as amended in 1987 differs sharply from the analysis in Masaniai of the same statute prior to the 1987 amendment. The Appellate Division in that case construed the pre-1987 statute by reference to another pre-1987 statute (A.S.C.A. § 46.2203) providing that probation should generally be imposed only in cases where the Court has determined that institutional confinement is not necessary, and by reference to opinions from United States courts relying on the intent of legislatures in the United States in enacting similar provisions. The Appellate Division was neither called upon to construe the post-1987 statute now before us, nor presented with the argument that the text and history of that statute suggest legislative intentions somewhat different from those underlying similar provisions in other jurisdictions. Our holding therefore does not conflict with the Appellate Division's holding in Masaniai.

Our analysis of the function of A.S.C.A. § 46.2206 as amended also suggests a conflict with A.S.C.A. § 46.2203, the section providing that probation should not be given unless institutional confinement is deemed unnecessary. If we are correct in our view that the 1987 enactment was clearly designed to allow the Court to use probation in certain cases where institutional confinement is necessary --- and it is hard to imagine any other legislative purpose behind an enactment which explicitly provides for up to fifteen years' detention as a condition of probation-- then the general rule stated in § 2203 cannot operate as a limitation on the Court's power to imposes conditional detention under § 2206. It is axiomatic that in cases of otherwise irreconcilable conflict between statutes the later statute governs the earlier, the new law having implicitly amended all conflicting prior laws pro tanto. In any case, apparent conflicts are often reconciled by application of the rule that the more specific statute (in this case § 2206 as amended) governs the more general.

the opposite purpose: to prevent prisoners deemed especially dangerous by the sentencing judge from being released almost immediately on furloughs, work releases, unsupervised and open-ended "work details," and other euphemistic devices by which convictions and sentences could be effectively cancelled.

Aside from the tendency of these devices to diminish the value of imprisonment as a way to deter and punish crimes, they had a corrosive effect on the whole criminal justice process by giving rise to a general impression in the community that it was unsafe to testify against a violent criminal or otherwise to assist in his prosecution. A convict's access to various forms of early release depended more on having a personal relationship with some government official inside or outside the prison --- for a time it seemed that almost any official would do, and that almost every prisoner had some such relationship --- than with any formal criteria. These abuses tended to usurp not only the sentencing power of the Court but also the legitimate authority of identified, accountable executive officials to grant pardons and paroles in specified circumstances; they threatened "[t]o reduce the criminal justice system of American Samoa to the level of make-believe." _American Samoa Government v. Dole_, 3 A.S.R.2d 63, 65 (1986).

The _Dole_ case and several other well-publicized instances in which violent or repeat offenders were released into the community soon after sentencing were the background of the 1987 amendment to A.S.C.A. § 46.2206. By then the Justices of the High Court were routinely using detention as a condition of probation in order to prevent the immediate release of dangerous offenders. By allowing certain prisoners to be classified as probationers subject to the supervision of the Court (rather than ordinary prisoners subject only to the supervision of the executive branch) the probation statute afforded a way for the Court to prohibit early release without Court approval. The maximum time allowable for such conditional detention was then one year. When the conviction was for burglary, assault with a deadly weapon, or even manslaughter, a sentence of one year actually served seemed a more effective punishment and deterrent than a five-year sentence that would be ignored. In such cases as rape and murder, however --- precisely the cases in which

society needed  the most protection --- one year of
detention was simply not enough.  In such cases the
judge would generally give a "straight sentence" of
fifteen  years  and  hope  the  sentence  would  be
enforced.

### The 1987 Amendment

The 1987  amendment was an effort to cure this
anomaly.[3]  It abolished the flat  one-year limit on
the period  of detention that could be imposed as a
condition  of  probation  in  felony  cases,
substituting  a  formula  related  to  the  maximum
sentences  for  particular  felonies.  When  the
maximum  sentence  is  for  a  term  of  years  the
sentencing judge may elect to suspend the sentence,
put  the  prisoner  on  probation,  and  impose
conditional detention for up  to  one-third  of the
maximum  allowable  sentence.  When  the crime is
punishable  by  life  in  prison  the  maximum
conditional detention is fifteen years.

### The Current Statutory Scheme

The  effect  of  the  amendment  is to allow a
judge to prohibit  the  early  release  of  a felon
without giving  him an unduly short sentence.  This

---

[3]  American Samoa does not  keep verbatim
records  of  legislative  debates.  That the
amendment was a response to the concern of the
Justices and others that conditional detention
should be available as  a means  of preventing
early  release  of  dangerous  criminals  is,
however, suggested  by the  text and structure
of the  statute itself:  why else increase the
maximum allowable  detention  so dramatically,
from one  year to  fifteen?  The amendment is
linked to this concern by other  evidence that
is a matter of public record: Justice Murphy's
plea for reform in the Dole opinion in October
of 1986  is one  such record.  Another is the
written  proposal  by  which  the  Governor
suggested to  the Fono  what eventually became
the text  of  the  1987  amendment, commenting
that it had been suggested to him by the Chief
Justice.  In any case, the facts stated in the
text are  so widely known among those familiar
with criminal justice  in  the  Territory that
they are a proper subject of judicial notice.

is done by providing two alternative modes of sentencing, under each of which the prisoner can be expected to serve the same amount of time as if he had been sentenced under the other:

 1) The judge can impose a "straight sentence." The prisoner will then be eligible for parole after he has served one third of his sentence, or fifteen years in the case of a life sentence. According to established practice he will almost certainly be released at that time.

 2) Or the judge can impose probation and conditional detention --- with the limit on detention figured according to the same formula as would otherwise determine eligibility for parole. The prisoner will still be released after he has served one-third of the statutory sentence, or fifteen years for a life sentence.

The only difference between the two modes of sentencing is in the degree of control exercised by the Court over the conditions of detention. If a prisoner is not deemed dangerous to the community and there is no other reason to fear his premature release, a "straight sentence" can be used. If it is especially important to ensure that the prisoner will actually remain in prison, probation and conditional detention are appropriate.

## Parole and Probation as Alternative Remedies

The interpretation advanced by counsel for the petitioner would destroy the symmetry of this scheme. It ignores the obvious point of defining the formula for detention in probation cases almost identically with the formula for parole in "straight sentencing" cases. When Mr. Atuatasi was given probation and conditional detention, he effectively received the benefit of parole _in advance_ by means of a two-thirds discount on his sentence. If at the time of sentencing the Court had been faced with the possibility that under the conditional detention option Mr. Atuatasi would serve only one-ninth of his sentence, we would have felt constrained to forego this option. Nine months would have been far too short a sentence for this crime. The suggested interpretation would

thereby restore the pre-1987 situation in which conditional detention was useful for dealing with petty crimes but ineffective as a means of protecting society from really dangerous criminals. This is the very situation the current law was designed to cure.

In order to give the 1987 conditional detention law under which Mr. Atuatasi was sentenced the effect for which it was intended---indeed, in order to give it any effect at all---it is necessary to recognize that probation and parole are alternative rather than cumulative remedies. This is clearly implicit in the parole statute itself, which gives jurisdiction to the Parole Board only after the prisoner "has served" a specified portion of "the sentence of imprisonment." A.S.C.A. §§ 46.2703, 46.2304. A probationer, on the other hand, never begins to "serve" his "sentence of imprisonment"; the Court places him on probation only upon suspending either the imposition or the execution of his term. The probation statute clearly contemplate the "sentence of imprisonment" as something that will be served only in the event probation is revoked, and as something quite distinct from the "period of detention" that may be imposed as a condition of probation. See A.S.C.A. §§ 46.2203, 46.2206(3), 46.2209.

The judgment and sentence in Mr. Atuatasi's case explicitly preserves this distinction: his "sentence" is seven years, whereas the "period of incarceration" of two years and 121 days is one of the "conditions" on which the sentence is suspended and probation imposed. American Samoa Government v. Atuatasi, CR No. 12-87, Judgment and Sentence, page 2.

The very earliest point at which Mr. Atuatasi can be said to have "served" one-third of his seven year "sentence of imprisonment" will be two years and 121 days after his imprisonment began. It seems more technically precise, however, to recognize that he has never begun serving the sentence at all and will not do so unless his probation is revoked. Parole is simply not available to a person whose sentence has been suspended on the condition that he serve a special term of detention equal to no more than one-third of that sentence.

63

The parole and probation remedies could be made cumulative rather than alternative by construing the term "sentence of imprisonment" in the parole statute as a generic reference to any detention imposed for any reason at all rather than as a specific reference to the "sentence of imprisonment" defined in the Code chapter on Imprisonment. We would adopt such a construction if it were suggested by the general statutory scheme, or if it seemed necessary to mitigate any unintended harshness in the 1987 amendment.

On the contrary, however, the statutory scheme demands that "sentence of imprisonment" be given a precise rather than a generic interpretation. The section of the parole statute dealing with eligibility for parole specifically incorporates the definition of "the sentence of imprisonment" contained in the imprisonment statute. A.S.C.A. §§ 46.2702, 46.2402. The probation statutes, even while they contemplate conditional "detention," clearly exclude the argument that a probationer is serving "the sentence of imprisonment." A.S.C.A. §§ 46.2203, 46.2206(3), 46.2209. And the 1987 amendment to the conditional detention section does not add to this scheme any sharp edges that need to be rounded out by broad judicial interpretation of the parole statute: as we have discussed, the amendment itself fully compensates incarcerated probationers for the unavailability of parole by limiting the period of their detention to the parole term itself. As a probationer serving a term of detention under the supervision of the Court, Mr. Atuatasi will be released on the very day he would have been eligible to apply for parole if he were an ordinary prisoner serving his seven-year sentence subject to the jurisdiction of the Parole Board.[4]

---

4  Counsel for Mr. Atuatasi also argues that the sentence in this case was unconstitutional in that it violates the Governor's pardon power. This seems clearly wrong, precisely because the pardon power is constitutional and takes precedence over statutes including the probation statute. If the Governor were to pardon Mr. Atuatasi for his crime he could no longer be incarcerated. The parole power, in contrast, is statutory and can therefore be limited by statute. For the reasons stated in the text, the parole

## II. Procedural Due Process

Mr. Atuatasi argues that he should not have been reconfined without an arrest warrant and/or a hearing.

The purpose of requiring an arrest warrant is to ensure that no one will be arrested unless there is probable cause to believe he has committed a crime. The warrant constitutes the assent of a judicial officer to the proposition that probable cause exists. In this case there is no reason at all to believe that Mr. Atuatasi committed a crime subsequent to his improper release from prison. Rather, his confinement was pursuant to the unambiguous mandate of a valid Court order requiring that he remain in confinement for two years and 121 days and that he not be released without prior Court approval. This order was issued after a showing that there was not just probable cause to believe he had committed a crime, but proof beyond a reasonable doubt that he had done so.

Mr. Atuatasi's release clearly violated the Court order, and the Warden was in continuing violation of the order for as long as Mr. Atuatasi remained at large. Up until the time the Warden noticed the discrepancy between the Parole Board order and the Court order, his noncompliance with the latter was of course entirely understandable. As soon as the violation of the Court order was called to his attention he consulted with counsel and moved to conform his conduct to the order by taking Mr. Atuatasi back into custody. The order itself was issued pursuant to due process of law, and it could be enforced without further judicial assent to the proposition that Mr. Atuatasi had committed a crime.

Similarly, Mr. Atuatasi was not accused of violating the terms of his parole or probation, so he was not eligible for the hearings provided by

power could not be exercised in this case because its exercise violated not only the probation and conditional detention laws but also the jurisdictional provision of the parole statute itself.

65

statute for persons against whom such accusations were made. Rather, his situation was analogous to that of a convict who has been mistakenly released from prison by guard, an assistant warden, or some other official with no authority to order such release. Upon finding that such a person is at large the Warden first places him back in custody and then worries about a hearing. (The Assistant Attorney General, who advised the Warden to rearrest Mr. Atuatasi immediately upon learning of his release, testified at the hearing of this case that he regarded Mr. Atuatasi as dangerous to the community. This judgment is fully consistent with the nature of his crime and with the Court's earlier order forbidding his release.)

Within a few hours after Mr. Atuatasi had been rearrested, the government did move to provide him with a hearing. The Assistant Attorney General notified the Chief Justice that Mr. Atuatasi was back in custody and asked whether there should be an immediate hearing. The Chief Justice responded that there was already a Court order requiring Mr. Atuatasi's confinement, but that Mr. Atuatasi's lawyer should be notified immediately so that he could request a hearing if Mr. Atuatasi so desired. The record reflects that this was done.

It is not clear why Mr. Atuatasi's counsel of record, the Public Defender, did not request an immediate hearing. A hearing was in fact held as soon as Mr. Atuatasi requested one. Although Mr. Atuatasi's new counsel did not request an expedited hearing, the Court expedited the hearing on its own motion. At the hearing the government was required to show everything it might conceivably have been required to show if a hearing had been held immediately before or after Mr. Atuatasi was taken back into custody. The petitioner himself was likewise given an opportunity to present such arguments and evidence as he might wish. The record is devoid of any suggestion of the slightest possibility that the outcome of the hearing would have been different if it had been held earlier.

If the procedure by which Mr. Atuatasi was taken back into custody fell short of due process, the provision of immediate notice to his counsel of record and of a plenary hearing immediately upon his request would seem to have cured this deficiency or at least rendered it moot. It is hard to imagine any curative measure that has not

66

yet been taken. If the manner of Mr. Atuatasi's rearrest was unlawful it would presumably result in the exclusion of any evidence obtained as a result of the rearrest, but that is not an issue in this proceeding. The Court could order Mr. Atuatasi rereleased so that a further hearing could be held prior to any rearrest, but the evidence and arguments at such a hearing would presumably be identical to those adduced at the previous hearing. Or the Court could announce a rule that any inadvertently released prisoner the manner of whose reconfinement is procedurally deficient will be released from the remainder of his term; but this seems harsh on the people the criminal laws are designed to protect.

### Conclusion

Mr. Atuatasi's continuing confinement pursuant to the Court's judgment and sentence is lawful. Notice to his counsel of record upon his being taken back into custody, and the provision of an immediate hearing upon his request, fulfilled the procedural requirements of due process or at least rendered moot any procedural deficiencies in the manner of his reconfinement.

The motion to reconsider our dismissal of the action is denied. It is so ordered.